# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDY JIMENEZ, | ) 1:09cv01909 DLB |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S <br> ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner <br> of Social Security, | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff Rudy Jimenez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed his application on August 18, 2006, alleging disability since November 22, 2004, due to leg and back pain, depression and "mental intelligence challenges." AR 136-138, 150-158. After his application was denied initially and on reconsideration, Plaintiff requested a

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

hearing before an Administrative Law Judge ("ALJ"). AR 85-88, 91-95, 98. ALJ Christopher Larsen held a hearing on August 19, 2008, and issued an order denying benefits on January 7, 2009. AR 15-26, 27-67. On August 20, 2009, the Appeals Council denied review. AR 9-12.

Hearing Testimony

ALJ Larsen held a hearing on August 19, 2008, in Fresno, California. Plaintiff appeared with his attorney. Vocational expert ("VE") Judith Najarian also appeared and testified. AR 27.

Plaintiff testified that he was 50 years old at the time of the hearing. He has not driven since the day of his accident because he can't sit down for too long and is scared of the pain. AR 35. In November 2004, Plaintiff's left leg was crushed between a forklift and a railing. AR 36. At the time, Plaintiff was a forklift driver in shipping and receiving. AR 37.

Plaintiff completed the twelfth grade and can read and write in English. He testified that he could not perform his prior forklift job because he cannot climb or concentrate. AR 37-38. He explained that he also has diabetes, which is mostly controlled with insulin. AR 38. Plaintiff has numbness "24 hours a day, seven days a week," from his left foot to his neck. AR 39. He also testified that his arms and right foot are numb. AR 46, 48.

The ALJ asked Plaintiff if he was in pain and he indicated that he was and did not really want to continue the hearing. Plaintiff described sharp pains in his leg and back and asked for a glass of water. AR 40. Plaintiff continued testifying and explained that he has constant pain in his left thigh that feels like someone is stabbing him. His pain medication does not help. AR 41. Plaintiff also has pain in his upper and lower back. AR 41. His lower back causes more problems because it is painful when he is laying down, sitting or standing. AR 42-43. Plaintiff has a hard time walking on his left foot because of the numbness. AR 43. He also testified that he blacks out about two or three times a day, for about 10 to 15 minutes, because of the pain. AR 44. He blacks out often while standing and tries to reach for something so he doesn't fall too hard. AR 44. Plaintiff doesn't use a cane because a doctor never gave him one. AR 44. He also explained that he suffers from fatigue that causes him to lose energy three or four times a day. AR 45.

1 Plaintiff further testified that he suffers from depression and anxiety. He has not used
2 drugs since the day of his accident. AR 47.

3 Plaintiff thought that he could sit for about 10 to 15 minutes and could stand for about 10
4 minutes. He thought he could walk for 15 minutes. Plaintiff estimated that he could lift 5 to 10
5 pounds, and explained that if he lifts more than that, his legs start shaking and he hurts
6 everywhere. AR 47. When he walks, he has to lean on something every 5 to 10 minutes so that
7 he won't fall. AR 48. If he reaches too fast with his arms, he starts to shake and falls down. AR
8 49-50. Plaintiff lays down about every 20 minutes during the day. AR 51. He cannot bend his
9 left knee. AR 52.

10 Plaintiff further explained that he has problems with concentration and gets confused
11 after focusing on something for 15 or 20 minutes. He spends the day in his house. He cannot do
12 chores and testified that he is constantly in the restroom. He explained that because of his
13 diabetes, he vomits about once or twice a week. AR 55. Plaintiff sleeps for about an hour and
14 then is awake for two hours because of pain, both day and night. AR 56.

15 The ALJ asked Plaintiff if he was in as much pain during his May 2006 and November
16 2006 examinations as he was during the hearing. Plaintiff stated that he was. AR 57. The ALJ
17 also asked why Plaintiff told a psychiatrist in November 2006 that he was still using crank and
18 crystal meth when he could afford it, even though he testified that he stopped using drugs in
19 November 2004. Plaintiff explained that his sister has him on a tight budget so he can't do drugs
20 anymore. Plaintiff admitted that it was true that he used drugs in November 2006, but "just that
21 one time for about one day." AR 57.

22 For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age,
23 education and work experience. This person could perform medium work and could
24 occasionally climb, balance, stoop, kneel, crouch and crawl. This person could understand,
25 remember and carry out only simple one or two-step job instructions. The VE testified that this
26 person could not perform Plaintiff's past work but could perform unskilled, medium positions.
27 For example, this person could perform the positions of hand packer, laminating machine feeder
28 and equipment cleaner. AR 60-61.

3

If the limitation to simple, repetitive tasks was removed from the hypothetical, the VE testified that this person could perform Plaintiff's past relevant work. AR 61-62.

For the second hypothetical, the ALJ asked the VE to assume that this person could lift and carry 20 pounds occasionally, 10 pounds frequently, and stand and walk for less than 4 hours total. This person could not perform any work. AR 62.

Regarding the first hypothetical, Plaintiff's attorney asked the VE to assume that this person had moderate difficulties in maintaining concentration, persistence or pace. Plaintiff's attorney asked the VE if this "would affect any of the jobs in hypo one." The VE indicated that id this person "could not maintain" attention, concentration, persistence or pace, it would affect the positions and she would "eliminate the job." AR 63.

Plaintiff's attorney asked if having a sit/stand option would impact the jobs in hypothetical one. The VE testified that such an option would eliminate "that job," the forklift position. AR 63. If this person had to alternate between sitting and standing, and also needed to lean against a wall, it would eliminate the forklift position. AR 64. Similarly, someone who had blackouts two to three times per day because of pain would not be able to drive and could not perform the forklift position. AR 65. If this person needed to lay down for 20 minutes every hour, he could not perform any work. AR 65. If this person could reach for about 10 to 15 minutes but then needed a 20 to 30 minute break, this person could not perform any work. AR 65.

Medical Evidence[2]

On November 3, 2006, Plaintiff underwent a psychological evaluation performed by Richard Engeln, Ph.D. Plaintiff reported a significant drug and alcohol history and stated that he did crank and crystal meth for 15 years. Plaintiff reported that "he still does these drugs once in a great while, when he can afford it." Plaintiff stopped drinking two years ago. On examination, Plaintiff was alert and had no signs of delusions, hallucinations or confusion. Intellectual measurements indicated verbal intelligence scores high in the mild range of mental retardation

---

[2] Plaintiff's claim involves his mental health impairment and therefore only related evidence will be summarized.

and visual intelligence scores high in the high borderline range.  His working memory was in the low average range.  Plaintiff's scores reflected a tendency to shut down and feel overwhelmed when multiple units of information are presented at one time.  AR 301-303.

Dr. Engeln found no evidence of any mental or emotional illness.  Plaintiff's verbal expression was easily understood and he showed positive effort.  Plaintiff was diagnosed with adjustment to medical-physical issues, polysubstance abuse and moderate academic delay.  He was mentally competent to manage his funds, though his history of substance abuse suggests a limited conservatorship needs to be appointed to assist Plaintiff in money management issues.  Verbally, cognitively and socially, Plaintiff was capable of job adjustment in a context where instructions are unidimensional and normal supervision is provided.  Plaintiff can receive instructions that are one-to-two step in nature and is very capable of completing a job once instructions are understood.  Plaintiff would have difficulty with technical or complex job instructions, or where academic components are required.  AR 303-304.

On November 22, 2006, State Agency physician R. Tashjian completed a Psychiatric Review Technique form.  In rating Plaintiff's functional limitations, Dr. Tashjian opined that Plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace.  AR 326-337.

On May 15, 2007, State Agency physician P. Davis completed a Mental Residual Functional Capacity Assessment.  Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions.  He was not significantly limited in any other area.  AR 343-345.

On June 27, 2007, Plaintiff's attorney referred him to Smadar Aviv, Ph.D., for an assessment of his current condition.  Plaintiff was accompanied by his sister, who relayed most of the information since Plaintiff was "quite catatonic."  She reported that she reentered Plaintiff's life when he stopped using drugs about a year ago.  During the examination, Plaintiff could not find a comfortable place on the chair and his face was clenched and detached.  Plaintiff stated that he could only think of the pain and was slow to respond to questions.  His

concentration and focus were very impaired and slow. Plaintiff was not completely oriented, did not know what day it was and had difficulty with the alphabet. His affect was odd and his intellectual functioning seemed very low and below average. Plaintiff reported that getting a job and moving away from Riverdale would make him happy. Given Plaintiff's physical limitations and pain, and his impaired and slow mental processing, Dr. Aviv did not think that Plaintiff was fit for any working environment. AR 441.

<u>ALJ's Findings</u>

The ALJ determined that Plaintiff had the severe impairments of status-post crush injury to left thigh, borderline intellectual functioning and polysubstance abuse. AR 20. Despite these impairments, Plaintiff retained the residual functional capacity ("RFC") to perform medium work, with occasional climbing, balancing, stooping, kneeling, crouching and crawling and a limitation to simple one-to-two step job instructions. AR 21. Based on the testimony of the VE, the ALJ determined that Plaintiff could perform a significant number of positions in the national economy. AR 25.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a preponderance. <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson</u>, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. <u>Jones v. Heckler,</u> 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. <u>E.g.</u>, <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

substantial evidence. *See* Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th Cir. 1987).

### REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (status-post crush injury to left thigh, borderline intellectual functioning and polysubstance abuse) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but (5) retains the RFC to perform a significant number of jobs in the national economy. AR 20-25.

Here, Plaintiff argues that the ALJ erred at step five.

### DISCUSSION

Plaintiff argues that the ALJ erred at step five by failing to accept the VE's testimony, in response to a question from Plaintiff's attorney, that a person with moderate limitations in maintaining concentration, persistence or pace would be precluded from previously identified work. AR 63.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Security Admin.*, 466 F.3d 880, 883 (9th Cir.2006).

As part of his step three analysis, the ALJ accepted the State Agency physician's finding that Plaintiff had moderate limitations in maintaining concentration, persistence or pace. AR 23, 25. The ALJ then determined that Plaintiff was limited to simple, one-to-two step instructions as part of the RFC analysis. When also taking into consideration Plaintiff's physical abilities, the VE testified that such a person could perform unskilled, medium positions. For example, this person could perform the positions of hand packer, laminating machine feeder and equipment cleaner. AR 60-61.

Plaintiff now attempts to impose the moderate limitation in maintaining concentration, persistence and pace discussed at step three on the RFC finding. First, however, the VE did not testify that such a limitation would preclude all work. Instead, she stated that it would preclude the previously identified positions. AR 63. The VE also mistakenly responded based upon someone who "could not maintain" concentration, persistence and pace. AR 63. The VE's response therefore does not support Plaintiff's argument and was not based upon a proper reading of the medical evidence.

Second, Plaintiff's argument ignores a fundamental tenet of the social security evaluation process. A claimant's RFC is the most a claimant *can still do despite* his or her limitations. 20 C.F.R. § 404.1545(a)(1). Indeed, claimants will have limitations, but in a majority of instances, they will retain the ability to perform some tasks. The RFC determination therefore assumes the existence of limitations. Here, then, although Plaintiff had a moderate limitation in maintaining

concentration, persistence or pace, the ALJ determined that *despite* this, he could perform simple, one-to-two step tasks. AR 21-24.

The Ninth Circuit has also rejected Plaintiff's argument. In <u>Stubbs-Danielson v. Astrue,</u> 539 F.3d 1169, 1174 (9th Cir. 2008), the claimant argued that the ALJ's RFC for simple, routine, repetitive work failed to capture a moderate limitation in the ability to perform at a consistent pace. Even though the vocational expert testified that anything more than a mild limitation with respect to pace would preclude employment, the ALJ rejected this conclusion, in part, because it did not address the claimant's RFC. In concluding that the ALJ's RFC properly incorporated the limitations regarding attention, concentration and adaptation, the Court explained:

> The ALJ translated Stubbs-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him-Dr. Eather's recommended restriction to "simple tasks." This does not, as Stubbs-Danielson contends, constitute a rejection of Dr. McCollum's opinion. Dr. Eather's assessment is consistent with Dr. McCollum's 2005 MRFCA, which found Stubbs-Danielson is "not significantly limited" in her ability to "carry out very short simple instructions," "maintain attention and concentration for extended periods," and "sustain an ordinary routine without special supervision." As two of our sister circuits have recognized, an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony. See <u>Howard v. Massanari, 255 F.3d 577, 582 (8th Cir.2001)</u> (where state psychologist both identified claimant as having deficiencies of concentration, persistence or pace and pronounced claimant possessed the ability to "sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function," ALJ's hypothetical including ability to perform "simple, routine, repetitive tasks" adequately, captured claimant's deficiencies in concentration persistence or pace); <u>Smith v. Halter, 307 F.3d 377, 379 (6th Cir.2001)</u> (where ALJ's hypothetical incorporated concrete restrictions identified by examining psychiatrist regarding quotas, complexity, and stress, ALJ did not err in failing to include that claimant suffered from deficiencies in concentration, persistence, or pace).
>
> The Eighth Circuit's decision in *Howard* is directly on point. There, the court explicitly rejected a claim that an ALJ's hypothetical describing an ability to do "simple, routine, repetitive work" failed to capture deficiencies in concentration, persistence, or pace. The court noted the state psychologist's findings which concluded that the claimant, despite certain pace deficiencies, retained the ability to do simple, repetitive, routine tasks. See <u>Howard, 255 F.3d at 582</u>. The medical evidence by Dr. Eather in the present case reflects the same conclusion.

<u>539 F.3d at 1174</u>.

Based on this Circuit's precedent, the ALJ did not err by finding that Plaintiff was capable of simple, one-to-two step tasks despite a moderate limitation in maintaining concentration, persistence or pace.

The ALJ's treatment of Plaintiff's mental impairment was supported by substantial evidence and was free of legal error.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Rudy Jiminez.

IT IS SO ORDERED.

Dated:   **October 20, 2010**                      **/s/ Dennis L. Beck**
                                                            UNITED STATES MAGISTRATE JUDGE